NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0484n.06

No. 12-3883

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

May 14, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| BRYAN SCOTT EMMONS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  MARTIN, GILMAN, and KETHLEDGE, Circuit Judges.

PER CURIAM.  Bryan Scott Emmons, who is represented by counsel, appeals the district court's judgment following his conviction on multiple charges involving child pornography.

After obtaining a warrant, police searched Emmons's residence and seized a substantial amount of child pornography.  Emmons was present and confessed to using a peer-to-peer (P2P) file-sharing program to download and distribute child pornography.  Emmons was charged with four counts of distribution of child pornography and one count of possession of child pornography.  *See* 18 U.S.C. §§ 2252(a)(2), (a)(4), (b)(1), (b)(2), 2253(a)(1), and (a)(3).  Emmons moved to suppress the evidence, arguing that the warrant was not supported by probable cause.  The district court denied the motion.  Emmons stipulated to a statement of facts, admitting that the government could prove each element of the charged offenses beyond a reasonable doubt.  The district court convicted Emmons of all five counts at a bench trial.

The presentence report assigned Emmons a total offense level of thirty-seven.  Emmons had a criminal history category of I, which resulted in an advisory sentencing guidelines range of 210 to 262 months of imprisonment.  The report recommended special terms of supervised release that

would require Emmons to pay the balance of any special assessment and provide all financial information to his probation officer upon request; bar him from loitering in areas where minors congregate; and forbid him from renting or using a post office box, or storage facility, without prior approval.

At sentencing, Emmons argued that the USSG § 2G2.2(b)(3)(B) enhancement which he received should not apply because he had not distributed pornography with the expectation of receiving anything in return. The district court overruled the objection. After considering the 18 U.S.C. § 3553 factors, the court concluded that a significant prison term was necessary. Accordingly, the court imposed a sentence of 210 months of imprisonment, supervised release for life with the recommended special conditions, and a $500 special assessment. Because Emmons could not pay the assessment immediately, the court established a payment schedule. When asked if he had any other objections, Emmons only objected to the length of his prison term.

In his timely appeal, Emmons argues that: 1) the district court erred by denying his motion to suppress because there was no probable cause to tie criminal activity to his address; 2) the § 2G2.2(b)(3)(B) enhancement was not appropriate because the government failed to prove that he had an expectation of receiving child pornography in exchange for his distribution of the same; and 3) the district court erred by imposing a lifetime term of supervised release without making adequate findings and by imposing the aforementioned special conditions. The government requests that we take judicial notice of any district court case mentioned in its brief.

We grant the request to take judicial notice with respect to the search warrant, which was docketed as a separate court proceeding. Federal courts may take judicial notice of proceedings that are relevant to the matter at hand. *See Kowalski v. Gagne*, 914 F.2d 299, 305–06 (1st Cir. 1990); *see also Sines v. United States*, No. 95-3214, 1995 WL 697165, at *1 (6th Cir. Nov. 21, 1995) (table). We deny the request to take judicial notice with respect to the other district court proceedings as they have no apparent relevance to this appeal.

Pamela S. Kirschner, a Federal Bureau of Investigation Special Agent, applied for a warrant to search 10164 and 10166 Columbia Road, Harrison Ohio, for evidence of child pornography. In the search warrant affidavit, she detailed the following information discovered by herself and other law enforcement officials. On May 6, 2010, Detective Sergeant Darren Parisien of Saskatchewan, Canada, accessed a P2P program, "friended" a user with the name "daddyndaughter2," and downloaded child pornography from his shared folders. The Internet Protocol (IP) address for daddyndaughter2 was traced to a Fuse Internet Access/Cincinnati Bell account registered to Lee Black of 1009 Sunset Avenue, Cincinnati, Ohio. A search and investigation revealed that daddyndaughter2 was using Black's unsecured wireless access without his knowledge.

On January 6, 2011, FBI Special Agent Daniel P. Evans accessed a P2P program, "friended" a user with the name "daddyndaughter7," and downloaded child pornography from daddyndaughter7's shared folders before he was deleted as a friend. The IP address for daddyndaughter7 was traced to a Time Warner Cable account registered to Thomas Beiting, located at 10166 Columbia Road, Harrison, Ohio.

After previously friending daddyndaughter7, Department of Homeland Security Special Agent Patrick M. McCall accessed a P2P program on April 24, 2011, and downloaded child pornography from daddyndaughter7's shared folders. The IP address was again traced to Beiting in Harrison.

On May 4, 2011, physical surveillance of 10166 Columbia Road revealed a fenced compound that included 10164 Columbia Road. A wireless survey showed a secured wireless network with a signal strength of three bars at the fortified fence. Subsequent research indicated that Emmons had been living at 10164 Columbia Road for approximately six months and had previously lived at 950 Sunset Avenue, Cincinnati, Ohio, from January 1, 2010, to October 31, 2010. His prior address was one house down and across the street and likely within the range of the wireless router belonging to Black on Sunset Avenue.

Agent Kirschner further stated that people sign up for successive free thirty-day trial memberships of P2P services by creating new accounts with the previous username and the next sequential number. By doing so, other members continue to recognize them. The affidavit also alleged that daddyndaughter2 had requested Detective Parisien "to add more content and add the name daddyndaughter3 to his profile, as daddyndaughter2 was going to expire in a few days."

Emmons contends that the search warrant was not supported by probable cause because there was not a sufficient nexus to link criminal activity to his house. He relies on the facts that the only prior evidence of distribution of child pornography came from 10166 Columbia Road; that his house was a separate residence; that there was no prior evidence of a computer in his home; and that there was no evidence of his use of the wireless signal from 10166 Columbia Road.

With respect to the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo, while applying great deference to the issuing judge's determination of probable cause. *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008). The Fourth Amendment requires "the issuing [judge] . . . to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 648 (internal quotation marks omitted). Neither proof beyond a reasonable doubt nor a preponderance of evidence is necessary, but some nexus must exist between the suspected crime and the property to be searched. *Id.*

The district court properly concluded that probable cause existed to support the search warrant. The search-warrant affidavit indicated that there was a fair probability that evidence of child pornography would be found at Emmons's home. The affidavit showed that the perpetrator used nearly identical usernames, that someone in close proximity Emmons's two residences repeatedly used a neighbor's wireless network, and that the perpetrator's IP address changed around the same time that Emmons moved. Thus, the affidavit established the necessary nexus between the

crime—distribution and possession of child pornography—and the location to be searched—Emmons's home.

Emmons next argues that the district court committed procedural error by imposing the § 2G2.2(b)(3)(B) enhancement because the government failed to prove that he had an expectation of receiving child pornography in exchange for his distribution of the same. The government argues that Emmons's expectation of receiving child pornography is evident from an online chat he had with FBI Special Agent Evans as well as his use of the Gigatribe P2P program, which purportedly allows a user to control which files he will share and with whom.

We generally "review sentences for reasonableness." *United States v. Collington,* 461 F.3d 805, 807 (6th Cir. 2006). Reasonableness review has both a procedural and a substantive component. *See Gall v. United States,* 552 U.S. 38, 51 (2007).

"The court's legal interpretation of the Guidelines are reviewed de novo, but its factual findings are reviewed under the clearly-erroneous standard." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). "Sentencing factors are to be determined by a preponderance of the evidence." *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012).

Section 2G2.2(b)(3)(B) provides for a five-level enhancement where the defendant distributed child pornography "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain[.]" This includes the distribution of child pornography with the expectation of receiving child pornography in return. *Battaglia*, 624 F.3d at 351. The enhancement does not apply merely because a defendant used a file-sharing program, but extensive use of the program resulting in the possession of several hundred images will weigh in favor of the enhancement. *United States v. Hardin*, 437 F. App'x 469, 474 (6th Cir. 2011).

Here, the stipulated facts included the following online chat between Emmons and Agent Evans:

> *daddyndaughter7*:    *no files?*
> undercover agent:    trying to stop leechers

| undercover agent: | whats your preference? |
| *daddyndaughter7*: | *any and all young* |
| undercover agent: | k |
| *daddyndaughter7*: | *not a leech here, any and all files I have relevant are here and open* |
| undercover agent: | I'll throw so[me]folders up for you |
| *daddyndaughter7*: | *ty* |
| *daddyndaughter7*: | *brb, gotta restart* |
| *daddyndaughter7*: | *can ya put some stuff up soon?* |

The chat was sufficient for the district court to find by a preponderance of the evidence that Emmons distributed pornography with the expectation that he would receive the same in return. Additionally, Emmons's use of a file-sharing program resulted in his possession of several hundred images. According to the presentence report, Emmons possessed 1,837 images and 89 videos of child pornography. The enhancement was proper.

Emmons next challenges the district court's imposition of lifetime supervision as well as three of the supervised-release conditions. Emmons did not object to the length or special conditions of his supervised release at sentencing. We therefore review his arguments for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Inman*, 666 F.3d 1001, 1003 (6th Cir. 2012). To establish plain error, the defendant must demonstrate that: 1) an error occurred; 2) the error was obvious or clear; 3) the error affected the defendant's substantial rights; and 4) the error seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Inman*, 666 F.3d at 1003–04.

Relying on *United States v. Inman*, *supra*, Emmons argues that the supervised-release portion of his sentence is procedurally unreasonable because the district court did not adequately articulate its reasons for imposing lifetime supervised release or the special conditions. For a sentence of supervised release to be procedurally reasonable, the sentencing court must consider the factors set forth at 18 U.S.C. § 3583(c), which refers back to § 3553(a)(1), (a)(2)(B)–(D), and (a)(4)–(7). *United States v. Presto*, 498 F.3d 415, 418 (6th Cir. 2007). The court must also articulate "in open court at the time of sentencing" its reasons for the chosen term of supervised release. *Inman*, 666 F.3d at 1003–04.

In *Inman*, we held that a lifetime term of supervised release in a child-pornography possession case was not procedurally reasonable where the district court neither considered the § 3553 factors when imposing the term of supervised release nor explained why it imposed a term of life instead of the parties' joint recommendation for a term of ten years. *Inman*, 666 F.3d at 1004. We also vacated the special conditions, which included a prohibition against renting or using a post office box or storage facility and a requirement that the defendant provide financial information to his probation officer, due to the district court's failure to articulate any reasons in support of these conditions. *Id.* at 1005–06.

Here, the district court did not give any reasons for imposing a lifetime term of supervision. Where a district court does not provide any explanation for the term of supervised release chosen, we cannot review the reasonableness of that decision. *See Inman.* at 1004. Thus, *Inman* requires us to vacate the supervised-release term.

The government responds that *Inman* is not applicable because the district court in *Inman* also failed to discuss the § 3553 factors with respect to the prison term. But the district court in *Inman* did discuss the § 3553(a) factors when imposing the sentence of incarceration. *Inman*, 666 F.3d at 1003. And as in *Inman*, the district court's discussion here of the § 3553(a) factors with respect to Emmons's prison term was insufficient by itself to constitute an explanation for Emmons's lifetime term of supervised release.

The district court's failure to explain the reasons for the term of supervised release constitutes clear error that affected Emmons's substantial rights and seriously affected the fairness, integrity, or public reputation of the proceedings. *See id.* There is a reasonable probability that the district court might not have imposed a lifetime term of supervised release if it had considered the § 3583(c) factors and explained its reasoning. *See id.* In contrast to some defendants convicted of possessing or distributing child pornography and sentenced to a lifetime term of supervised release, Emmons

has no prior history of molesting children. *Cf. Presto*, 498 F.3d at 420; *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007).

Emmons also challenges the imposition of three of the special conditions of his supervised release. He argues that the district court erred by not explaining why it chose the following conditions: the requirement that he disclose his financial information to his probation officer, the prohibition on renting or using a post office box or storage facility, and the prohibition on loitering in any location where minors congregate, such as playgrounds, swimming pools, sporting events, and shopping malls.

A special condition is appropriate where it is reasonably related to the rehabilitation of the defendant and the protection of the public, *i.e.*, it is reasonably related to the nature of the crime or the history and characteristics of the defendant. *Inman*, 666 F.3d at 1004. As with the length of supervised release, a district court must explain its reasons for imposing any special conditions of supervised release. *United States v. Dotson*, __ F.3d __, 2013 WL 1704941, at *4 (6th Cir. Apr. 22, 2013). A district court's failure to explain its reasoning "will be considered harmless error[, however,] if the supporting reasons are evident on the overall record[.]" *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001) (emphasis omitted).

Here, the district court plainly erred by not explaining why it imposed the chosen conditions of supervised release. *See, e.g.*, *Inman*, 666 F.3d at 1006. That error affected Emmons's substantial rights as well as the fairness, integrity, and public reputation of his sentencing proceedings because the district court might have selected less restrictive conditions had it fully considered and articulated on the record the reasons for its decision. *See Dotson*, 2013 WL 1704941, at *8. For example, the court might have required Emmons to turn over his financial information only until he paid the $500 special assessment rather than for life. The court might also have allowed Emmons to rent or use a post office box without the approval of his probation officer since his crimes involved the internet and not the mail. In addition, the court might not have imposed the loitering prohibition had it

considered that Emmons's crimes did not involve any actual contact with minors. *Cf. United States v. Zobel*, 696 F.3d 558, 575 (6th Cir. 2012).

And notwithstanding the government's contention to the contrary, the district court's error was not harmless because the reasons for imposing these conditions are not evident on the overall record. Although imposition of the challenged special conditions might be justified in this case, remand is appropriate so the district court can clarify, on the record, the reasons why it imposed them. *See Dotson*, 2013 WL 1704941, at *7.

Therefore, we grant the government's request to take judicial notice with respect to the search warrant. We affirm the district court's judgment in part, but vacate the judgment and remand the case for further proceedings as to the term of supervised release and the three special conditions that Emmons challenged.